T.C. Memo. 2016-32

UNITED STATES TAX COURT

LEONARD L. BEST AND EVELYN R. BEST, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 26662-10L.                    Filed February 29, 2016.

        Held:  Order to show cause why Ps' counsel should not pay
excessive costs pursuant to I.R.C. sec. 6673(a)(2) or be sanctioned
pursuant to Rule 33(b), Tax Court Rules of Practice and Procedure,
will be made absolute and excessive costs imposed on counsel.


Donald W. MacPherson, for petitioners.

Chris J. Sheldon, Doreen M. Susi, and Brandon A. Keim, for respondent.

---

        [*]This opinion supplements our previously filed Memorandum Opinion Best
v. Commissioner, T.C. Memo. 2014-72.

**[\*2]**                    SUPPLEMENTAL MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  Donald W. MacPherson is petitioners' counsel in this case.  In a prior report, <u>Best v. Commissioner</u>, T.C. Memo. 2014-72, we held that respondent may proceed with collection of petitioners' unpaid 1993 and 1994 Federal income tax, determined that petitioners must pay a penalty of $5,000 pursuant to section 6673(a)(1), and contemplated sanctioning Mr. MacPherson for unnecessarily bringing and prolonging these proceedings.[1]  By order dated April 28, 2014, we ordered Mr. MacPherson to show cause why we should not require him to pay respondent's excessive costs pursuant to section 6673(a)(2) or sanction him pursuant to Rule 33(b) (order to show cause).  We also ordered respondent to express his view on whether the Court should sanction Mr. MacPherson and, if so, to provide a computation of the excess costs respondent incurred.  Mr. MacPherson and respondent have complied with our order, and we have considered their responses.  Although Mr. MacPherson initially asked for a hearing, he has withdrawn that request.  For the reasons stated, we will make the order to show cause absolute and award to the United States $19,837.50.  Because,

---

[1]Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] in his response, Mr. MacPherson also addressed the penalty that we determined to impose on petitioners, we will briefly elaborate on our grounds for imposing that penalty.

Background

This proceeding to review respondent's determination to proceed with collection of petitioners' unpaid 1993 and 1994 Federal income taxes is not the first proceeding in this Court addressing those taxes. Previously, petitioners challenged respondent's determination of deficiencies in, and additions to, petitioners' 1993 and 1994 income tax liabilities. That proceeding, Best v. Commissioner, T.C. Dkt. No. 22241-07 (Jan. 2, 2009) (stipulated decision), was ended by agreement of the parties. We entered a stipulated decision sustaining substantial portions of the deficiencies in tax along with additions to tax for both failure to file a return and failure to pay tax timely and also for failure to pay estimated tax (all amounts, without distinction, taxes). Mr. MacPherson represented petitioners in that proceeding. Respondent assessed the resulting taxes. Petitioners failed to pay the assessed amounts, and respondent issued to them a Final Notice of Intent to Levy and Notice of Your Right to a Hearing.

Petitioners requested a section 6330 hearing, stating that they wished to pursue collection alternatives and penalty abatement. Mr. MacPherson

[*4] represented them at the hearing. Settlement Officer Irma Hernandez of the Internal Revenue Service Appeals Office (Appeals) reviewed various computer transcripts of petitioners' accounts for 1993 and 1994 and concluded that proper assessments had been made and that collection of the unpaid taxes could proceed. Mr. MacPherson requested account transcripts for both years, which Ms. Hernandez provided to him. The transcripts identified petitioners and the year and type of tax reported and showed the amounts and dates of assessments. During a telephone conference with Ms. Hernandez, Mr. MacPherson told her that petitioners had changed their minds about desiring a collection alternative and were withdrawing their request for such. He conceded that petitioners had stipulated a decision entered by the Tax Court and were not disputing the underlying liabilities. He stated that he was disputing the postdecision procedural steps. Although he claimed that the assessments were neither timely nor proper, he gave no specifics. He reiterated his earlier request that Ms. Hernandez "provide a 'summary record of assessment', Form 23C and a Form 4340, plus a copy of the actual document signed by the officer delegated authority to assess in this case, his name, and the delegation order showing his authorization to assess in this case." In making that request, Mr. MacPherson had communicated to Ms. Hernandez: "Clients are doubting liability/contesting timely & proper assessment & delegated

[*5] authority of assessment officer." Ms. Hernandez refused his request for those documents. She explained that there was no requirement in the Internal Revenue Code or the regulations that Appeals provide the taxpayer with any documents during the hearing process. She stated that, as a matter of practice, petitioners had been furnished the account transcripts, which "identify the taxpayers, the character of the liability assessed, the taxable period and the amount of the assessment". Ms. Hernandez informed Mr. MacPherson that Appeals would issue a determination sustaining the levy. On November 1, 2010, Appeals sent to petitioners a Notice of Determination Concerning Collection Actions(s) Under Section 6320 and/or 6330, informing them that the notice of intent to levy was correct and that respondent would proceed with collection.

On December 1, 2010, in response to the notice, petitioners filed the petition, which Mr. MacPherson signed on their behalf. By the petition, petitioners prayed that, "for lack of proper assessment", we determine that they have no tax liabilities for the years in issue. They averred that Ms. Hernandez abused her discretion by failing to give them copies of Form 4340, Form 23C, RACS 006, or a delegation order for the assessment officer who signed petitioners'

[*6] assessment.[2]  Respondent answered the petition and, eventually, the case was set for trial in June 2012, in Phoenix, Arizona.

In early February 2012, respondent's counsel contacted Mr. MacPherson to discuss the case.  Among other things, he warned Mr. MacPherson that the issues petitioners had raised during their section 6330 hearing and had alleged in the petition were listed in respondent's frivolous position notice and were contrary to established law.  At Mr. MacPherson's request, respondent's counsel provided him with copies of Notice 2010-33, 2010-17 I.R.B. 609, and Rev. Rul. 2007-21, 2007-14 I.R.B. 865, and he directed him to Craig v. Commissioner, 119 T.C. 252, 262 (2002) ("Nor does * * * [section 6330(c)(1)] mandate that the Appeals officer actually give a taxpayer a copy of the verification upon which the Appeals officer relied."), and Nestor v. Commissioner, 118 T.C. 162, 166 (2002) ("Section 6330(c)(1) does not require the Appeals officer to give the taxpayer a copy of the verification that the requirements of any applicable law or administrative procedure have been met.").  Respondent's counsel warned Mr. MacPherson that, if petitioners proceeded, respondent would request the Court to impose a section

---

[2]Form 4340 is a "Certificate of Assessments, Payments, and Other Specified Matters".  Form 23C is an "Assessment Certificate--Summary Record of Assessments".  RACS 006 is an "Revenue Accounting Control System Report 006", a computer-generated equivalent of Form 23C.  They all evidence assessment.  For clarity, we do not include the form names in the text.

**[\*7]** 6673(a)(1) penalty against them.  Sometime after they filed the petition, respondent provided to petitioners Certificates of Official Records attesting that the annexed Forms 4340 were true Forms 4340 for petitioners' 1993 and 1994 tax years.

On April 4, 2012, respondent filed a motion for summary judgment and for a continuance (to give the Court time to consider the motion for summary judgment).  On April 11, 2012, in a conference call with the parties, we stated our reluctance to continue the case if there was a genuine dispute as to a material fact.  Mr. MacPherson was unwilling to state that there was no such dispute.  As a result, we denied the motions.  Five days later, Mr. MacPherson contacted respondent's counsel to suggest that the parties submit the case to the Court fully stipulated under Rule 122 or that the parties make cross-motions for summary judgment.  The time for making summary judgment motions having expired, the parties agreed to proceed with a fully stipulated case.  They submitted a stipulation of facts and a Rule 122 motion, which we granted.  They filed briefs.

In our prior report, we stated that we discerned from the petition two grounds underlying petitioners' assignments of error.  Best v. Commissioner, T.C. Memo. 2014-72, at \*9.  One, collection could not proceed because Ms. Hernandez had abused her discretion in relying on transcripts to verify that their unpaid tax

[*8] had been properly assessed. Two, collection could not proceed because neither the account transcripts nor the Forms 4340 provided to petitioners during pendency of this case meet respondent's duty imposed by section 6203 to furnish them with copies of the Commissioner's records of assessment for the unpaid tax in issue. We treated petitioners' grounds as raising questions of law.

We found substantial authority rebutting petitioners' claim that Ms. Hernandez could not rely on computer transcripts to verify that their unpaid tax had been properly assessed. We stated: "Nothing in evidence indicates any irregularity in the assessment procedure that would raise a question that the assessments were not validly made in accordance with the requirements of section 301.6203-1, Proced. & Admin. Regs." Id. at *14.

We likewise found substantial authority that respondent had satisfied his obligation under section 6203 to furnish petitioners with the records of assessments of their unpaid tax. We stated that the information in the account transcripts furnished to petitioners by Ms. Hernandez "constitutes all of 'the pertinent parts of the assessment', which, pursuant to section 301.6203-1, Proced. & Admin. Regs., on their request, respondent must furnish to them." Id. at *15. We cited both cases of this Court and of the Court of Appeals for the Ninth Circuit for the proposition that "[The Commissioner] may choose among documents so

**[\*9]** long as the form used identifies the taxpayer, states the character of the liabilities assessed, the tax period giving rise to the assessment, the amount of the assessment, and the date of assessment." Best v. Commissioner, at \*16 (alteration in original) (quoting Battle v. Commissioner, T.C. Memo. 2009-171, 2009 WL 2151786, at \*5). The Forms 4340 furnished to petitioners after this case commenced contained information much the same as that contained in the account transcripts. Id. at \*16-\*17.

We imposed a section 6673(a)(1) penalty on petitioners because their two grounds lacked merit and were contrary to established law. We found that their arguments were frivolous; that nothing supported their assignments of error, which caused us to further conclude that their claims were groundless; and, finally, that they maintained the proceedings primarily for delay. We rejected their reliance-on-counsel defense.

We contemplated levying excess costs on Mr. MacPherson for unreasonably and unnecessarily bringing and prolonging the proceedings. We said that we would accord him the opportunity to respond to that charge.

[*10]                              Discussion

I.     Requirements for an Award of Excess Costs

       A.     Introduction

       Section 6673(a)(2) plainly imposes three prerequisites to an award of excess

costs.  First, the attorney or other practitioner (without distinction, attorney) must

engage in "unreasonable and vexatious" conduct.  Second, that "unreasonable and

vexatious" conduct must be conduct that "multiplies the proceedings."  Finally, the

dollar amount of the sanction must bear a financial nexus to the excess

proceedings; i.e., the sanction may not exceed the costs, expenses, and attorneys'

fees reasonably incurred because of such conduct.  See Gillespie v. Commissioner,

T.C. Memo. 2007-202, 2007 WL 2120069, at *10, aff'd, 292 F. App'x 517 (7th

Cir. 2008).

       B.     Unreasonable and Vexatious Conduct

       The purpose of section 6673(a)(2) is to penalize an attorney for his

misconduct in unreasonably and vexatiously multiplying the proceedings.

Congress has not, however, specified the degree of culpability that an attorney

must exhibit before we may conclude that his conduct in multiplying the

proceedings is unreasonable and vexatious.  We have previously relied on

interpretations of 28 U.S.C. sec. 1927 (2012) to ascertain misconduct justifying

**[*11]** sanctions under section 6673(a)(2) because both serve the same purpose and have substantially identical language. See, e.g., Takaba v. Commissioner, 119 T.C. 285, 296-297 (2002); Gillespie v. Commissioner, 2007 WL 2120069, at *10. The Courts of Appeals are not uniform on the level of misconduct required for sanctions. Moreover, appellate venue regarding section 6673(a)(2) is uncertain. Venue for appeal of Tax Court decisions is governed by section 7482(b). The venue for appeal is likely either the Court of Appeals for the Ninth Circuit (because of the legal residence of petitioners), see sec. 7482(b)(1)(A), or the Court of Appeals for the District of Columbia Circuit, see sec. 7482(b)(1) (flush language). The Court of Appeals for the Ninth Circuit is among the majority of the Courts of Appeals requiring a showing of bad faith. See Moore v. Keegan Mgt. Co. (In re Keegan Mgmt. Co. Sec. Litig.), 78 F.3d 431, 436 (9th Cir. 1996) (stating that 28 U.S.C. sec. 1927 sanctions must be supported by a finding of subjective bad faith). But it has held that bad faith is shown when an attorney "knowingly or recklessly" raises a frivolous argument. Id. The Court of Appeals for the District of Columbia Circuit may require only a showing of recklessness. See LaPrade v. Kidder Peabody & Co., 146 F.3d 899, 905 (D.C. Cir. 1998) ("This court has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be 'recklessness' or the more stringent 'bad faith.'");

[*12] <u>Dover v. Medstar Wash. Hosp. Ctr., Inc.</u>, 989 F. Supp. 2d 57, 63 (D.D.C. 2013) (repeating Court of Appeals' admonition).  Because we are unsure of appellate venue, and because we find that Mr. MacPherson's conduct would constitute bad faith under the Court of Appeals for the Ninth Circuit's test for bad faith, we will for purposes of this case (and without deciding the standard in this Court), adopt that standard.  See <u>Takaba v. Commissioner</u>, 119 T.C. at 298.

We have already found that petitioners' assignments of error are frivolous and groundless and were raised primarily for delay.  See <u>Best v. Commissioner</u>, at *21.  We believe that Mr. MacPherson intentionally abused the judicial process by bringing and continuing this case on behalf of petitioners knowing their claims to be without merit.  Indeed, by his own declaration submitted in support of petitioners' response to respondent's motion to impose sanctions on petitioners, Mr. MacPherson appears to concede that at least one of petitioners' assignments was frivolous.  <u>Id.</u> at *23.  He states that he "concluded many years ago that the '23C issue' was a 'dead letter' in so far as obtaining the 23C," <u>id.</u>, and yet, as described <u>supra</u>, he assigned error related to Form 23C.  Despite Mr. MacPherson's now arguing that it was not a concession, his statement, along with cases cited in the petition, demonstrates an awareness on his part that petitioners are not legally entitled to any particular document for section 6203 purposes.  Mr.

[*13] MacPherson knowingly raised a frivolous argument by arguing otherwise, and so he acted in bad faith.  See Keegan Mgmt. Co., 78 F.3d at 436.

Moreover, as to petitioners' remaining assignments of error, months before respondent made his motion for summary judgment respondent's counsel put Mr. MacPherson on notice that respondent considered those arguments frivolous and contrary to established law.  At Mr. MacPherson's request, respondent's counsel provided to him the authority on which counsel relied.  And so Mr. MacPherson had further knowledge that his claims were without merit.

C.    Multiplication of the Proceedings

In the face of both the authority Mr. MacPherson knew at the time the petition was filed and the authority provided by respondent's counsel, Mr. MacPherson persisted.[3]  At no point did he concede any of his assignments of

_____

[3]One of the authorities respondent's counsel brought to his attention was Nestor v. Commissioner, 118 T.C. 162, 166 (2002) ("Section 6330(c)(1) does not require the Appeals officer to give the taxpayer a copy of the verification that the requirements of any applicable law or administrative procedure have been met.").  Mr. MacPherson points to Judge Foley's dissenting opinion, id. at 179-180, in which he opined that the Appeals Officer's verification was erroneous because he had not complied with the requirement of sec. 6203 that, upon his request, "the Secretary shall furnish the taxpayer a copy of the record of the assessment."  The facts here are distinguishable, because Ms. Hernandez provided petitioners with account transcripts containing the "pertinent parts of the assessment", which is all that is required by sec. 301.6203-1, Proced. & Admin. Regs.  In any case, the dissenting opinion was not that adopted by the Court.

**[*14]** error. It was reckless and unreasonable of Mr. MacPherson to disregard the authority respondent's counsel brought to his attention and to continue prosecution of petitioners' meritless claims.

Mr. MacPherson further multiplied the proceedings and vexatiously impeded the resolution of this case by objecting to respondent's motion for summary judgment on the grounds that there was a genuine dispute as to material facts and then, in less than a week, reversing course and suggesting that the parties submit the case to the Court fully stipulated under Rule 122 or make cross-motions for summary judgment. In response to the order to show cause, he states that his reason for wanting a trial was to allow petitioners to testify in defense to the section 6673(a)(1) penalty. He never made that clear to the Court in his objection and has not offered an explanation for his almost immediate change of mind.

Finally, we find Mr. MacPherson to have multiplied proceedings in his response to our order to show cause. He submitted over 400 pages purporting to support his claim that sanctions are not appropriate, but much of it consists of Mr. MacPherson's persistence with arguments we have already told him are frivolous.[4]

---

[4]Despite Mr. MacPherson's inappropriate persistence with frivolous arguments, respondent has not asked and we will not impose on Mr. MacPherson

(continued...)

**[*15]** D.    Financial Nexus to Excess Proceedings

These proceedings never should have been brought.  All of respondent's costs are, thus, in a sense, excessive.  There is, however, some disagreement among the Courts of Appeals in interpreting 28 U.S.C. sec. 1927 as to whether it is only possible to multiply, or prolong, the proceedings after a case has been initiated; presumably because an attorney cannot begin to multiply the proceedings until some proceeding has come into existence for the attorney to multiply.  Compare Keegan Mgmt. Co., 78 F.3d at 435 (stating that 28 U.S.C. sec. 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun"), with In re TCI Ltd., 769 F.2d 441, 448 (7th Cir. 1985) (stating that, under 28 U.S.C. sec. 1927, trial judge "had the authority to award the fees incurred right from the beginning").  We have not addressed the analogous issue under section 6673(a)(2), and we are not compelled to do so today both because respondent has asked only for excessive costs associated with the work beginning more than a year after respondent answered the petition and because, as discussed infra, we find Mr. MacPherson independently sanctionable under Rule 33(b).

---

[4](...continued)
excess costs for time spent reading and responding to his over 400 pages of submissions.

**[\*16]** II.     <u>Violation of Rule 33(b)</u>

Mr. MacPherson has also violated Rule 33(b) and the ABA Model Rules of Professional Conduct (Model Rules), which, by Rule 201(a), govern his practice before this Court.

In pertinent part, Rule 33(b) provides:

> (b) <u>Effect of Signature</u>.  The signature of counsel * * * constitutes a certificate by the signer that the signer has read the pleading; that, to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  * * * If a pleading is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable counsel's fees.

In pertinent part, Model Rule 3.1 states:  "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."  As we have already stated, petitioners' arguments were frivolous.  We further find that arguments to modify or reverse existing law were not made in good faith.

[*17] Petitioners argued that section 301.6203-1, Proced. & Admin. Regs., is invalid and a denial of due process because, in response to a taxpayer's request for a copy of the record of the assessment, see sec. 6203, the regulation requires only that the Secretary provide "the pertinent parts of the assessment", which do not include the assessment source document (Form 23C or RACS 006), including the name and signature of the assessment officer and the date of assessment.[5]  In response, respondent argued that petitioners were barred from arguing the invalidity of the regulation because they had not raised the issue during their section 6330 hearing and the issue played no role in Appeals' determination to proceed with collection.  It is true that with rare exception we do not have authority to consider issues that were not raised before Appeals.  See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 115 (2007) (underlying liability); Magana v. Commissioner, 118 T.C. 488, 493-494 (2002) (abuse of discretion); secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  Principally for that reason, we did not discuss the validity of the regulation in our prior report.

---

[5]In pertinent part, sec. 301.6203-1, Proced. & Admin. Regs., provides:  "If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed."

**[\*18]** In any event, even if the validity of section 301.6203-1, Proced. & Admin. Regs., were properly before us, petitioners have made no plausible argument for its invalidity. The pertinent sentence of the regulation, providing that the Secretary fulfills his duty to a taxpayer requesting a copy of the record of assessment by furnishing him a copy of the pertinent parts of the assessment, has been a part of the regulation since its promulgation in 1954. See T.D. 6119, 1955-1 C.B. 145, 149-150. The Court of Appeals for the Ninth Circuit has stated with respect to that sentence: "This represents a permissible interpretation of section 6203, and we are therefore bound to give it deference." Koff v. United States, 3 F.3d 1297, 1298 (9th Cir. 1993). Also, numerous cases hold that, to satisfy a taxpayer's section 6203 request for the record of the assessment, the Secretary need not provide original documents, such as a Form 23C, RACS 006, or the name and signature of the assessment officer. E.g., Goodman v. United States, 185 F. App'x 725, 728 (10th Cir. 2006) ("No particular form or document is needed to satisfy the requirements of I.R.C. § 6203 and Treasury Regulation § 301.6203-1. Instead, an assessment record is sufficient if it provides the taxpayer with the required information."); Niemela v. United States, 995 F.2d 1061 (1st Cir. 1993) (unpublished table decision) (citing Gentry); Gentry v. United States, 962 F.2d 555, 558 (6th Cir. 1992) ("The Treasury Regulations specify that the taxpayer is

**[*19]** entitled to a copy of the pertinent parts of the assessment documents * * *

[and] [n]either the Tax Code nor the Treasury Regulations require those pertinent

parts to be original documents[.]"); United States v. Hart, 917 F.2d 26 (7th Cir.

1990) (unpublished table decision) (stating that the law is settled that the

Government does not have to produce original documents to comply with section

6203 and section 301.6203-1, Proced. & Admin. Regs.); Battle v. Commissioner,

2009 WL 2151786, at *5.  The long existence of section 301.6203-1, Proced. &

Admin. Regs., and the weight of authority contrary to petitioners' argument that

the regulation is invalid lead us to conclude that petitioners did not make their

contrary argument in good faith.

　　While Mr. MacPherson may be dissatisfied that Congress has not given

taxpayers carte blanche to search the Commissioner's records when the

Commissioner must take action to collect unpaid taxes,[6] petitioners have no legal

---

[6]In his declaration submitted in support of petitioners' response to respondent's motion to impose sanctions on petitioners, Mr. MacPherson states that, since petitioners "had a major collection problem * * * [he] decided to try the assessment issue believing there is some chance of lack of proper assessment which will result in voiding the assessment and causing * * * [petitioners] to be free of the debt as a result of the statute of limitations".  See Best v. Commissioner, T.C. Memo. 2014-72, at *23.  We do not directly address whether the assessment was proper but, rather, whether Ms. Hernandez complied with sec. 6330(c)(1) and (3)(A) and whether petitioners received "a copy of the pertinent

(continued...)

**[\*20]** grounds to complain about Ms. Hernandez's treatment of them or Appeals' resulting determination to proceed with collection.  Mr. MacPherson had no basis in fact and in law for bringing this proceeding and signing the petition.

"Rule 33(b) clearly imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. " Versteeg v. Commissioner, 91 T.C. 339, 343 (1988).  Mr. MacPherson has signed pleadings and other papers to bring and defend these proceedings knowing petitioners' claims to be meritless.[7]  He has done so in violation of our Rules and the Model Rules and, thus, has intentionally abused the judicial process.  We may sanction him for that conduct.

Accordingly, sanctions should be imposed on Mr. MacPherson under both section 6673(a)(2) and Rule 33(b) for filing the petition and multiplying the proceedings unreasonably and vexatiously.  Because only frivolous issues were raised, the bringing of this case in and of itself was nothing more than a meritless

---

[6](...continued)
parts of the assessment", which is all that they were entitled to under sec. 301.6203-1, Proced. & Admin. Regs.

[7]The pleadings and papers we have in mind are the petition, petitioners' brief, petitioners' reply brief, petitioners' response to respondent's motion to impose a penalty, supplement to petitioners' response to respondent's motion to impose a penalty, petitioners' motion for reconsideration, and petitioners' notice of relevant judicial decisions.

[*21] tactic requiring the use of Government and Court resources that could otherwise have been applied to hear legitimate taxpayer concerns. Respondent is entitled to his attorney's fees incurred in defending this case. The tactics Mr. MacPherson employed in this case were designed to impede respondent's legitimate efforts to collect petitioners' unpaid 1993 and 1994 taxes.

III.    Amount of Sanctions

One option for determining the amount of sanctions to impose on Mr. MacPherson is to follow what we said in Harper v. Commissioner, 99 T.C. 533, 549 (1992): "Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate. The product is known as the 'lodestar' amount." We ordered respondent to provide us with a computation of costs to assist us in computing a lodestar amount. In that regard, respondent has provided us with declarations of Attorneys Brandon A. Keim and Doreen M. Susi. Attached to both declarations are copies of respondent's internal timekeeping records, showing the time expended on this case by, among others, Mr. Keim and Ms. Susi.

Respondent submits for reimbursement 115.25 hours of Mr. Keim's time at $150 an hour. Mr. Keim is the attorney with day-to-day responsibility for this case. He is employed in the Office of Chief Counsel in Phoenix, Arizona. He has

[*22] been admitted to practice law in Arizona since 2011. He has detailed time spent on this case since January 28, 2012, which involves time spent on research, drafting, telephone calls, and review of submissions to the Court. Respondent also submits for reimbursement 12.75 hours of Ms. Susi's time at $200 an hour. Ms. Susi is Mr. Keim's supervisor. She is an Associate Area Counsel in the Office of Chief Counsel in Phoenix, Arizona. She has been employed by that office since 1983. She has detailed time spent on this case since April 7, 2012, which principally involves review of various submissions to the Court.

Mr. MacPherson does not challenge the reasonableness of either Mr. Keim's or Ms. Susi's hourly rates. For the most part, he also does not challenge the time spent by either Mr. Keim or Ms. Susi. He claims that respondent did not provide time sheets/records showing time expended. That claim is untrue. Respondent's internal timekeeping records were attached to both Mr. Keim's and Ms. Susi's declarations. He also argues that Mr. Keim's expenditure of 27 hours to prepare a motion for summary judgment and motion for continuance, and Ms. Susi's expenditure of 2.25 hours to review those motions were not reasonable or necessary: "No award should be provided for time expended re the useless MSJ".

We do not find 27 hours expended to prepare a motion for summary judgment and a motion for continuance to be unreasonable. And the only reason

[*23] that motion was "useless" was that Mr. MacPherson represented to respondent and the Court that trial was necessary as there were genuine issues of fact to be tried. As we have already stated, that representation was quickly refuted when, five days later and after we denied the motions, Mr. MacPherson suggested that the parties submit the case to the Court fully stipulated under Rule 122. If Mr. MacPherson had not made his initial representation, we could have fully resolved the case through respondent's motion for summary judgment. And so Mr. MacPherson prolonged these proceedings even further. We also find 2.25 hours expended to review a motion for summary judgment and motion for continuance to be reasonable.

Mr. MacPherson knew or should have known that this case should never have been commenced. And for that reason, we are inclined to hold that Mr. MacPherson is liable for all of the time spent by respondent, not to mention time expended by the Court in processing and reviewing all of Mr. MacPherson's submissions. We will limit our sanctions, however, to the lodestar amount submitted by respondent: 115.25 hours of Mr. Keim's time at $150/hour and 12.75 hours of Ms. Susi's time at $200/hour equals $19,837.50. We will sanction Mr. MacPherson and require him to pay that amount.

**[*24]** IV.    <u>Section 6673(a)(1)(B) Penalty Imposed on Petitioners</u>

In Mr. MacPherson's response to the order to show cause, he continues to address the section 6673(a)(1) penalty that we determined to impose on petitioners.  <u>See</u> <u>Best v. Commissioner</u>, at *22.  We will briefly expand on our reasons for imposing the penalty.

Section 6673(a)(1)(B) allows the Tax Court to sanction taxpayers for advancing frivolous or groundless positions.  In our prior report, we stated that reliance on the advice of counsel is not a defense to the imposition of a section 6673(a)(1)(B) penalty.  <u>Best v. Commissioner</u>, at *22.  Mr. MacPherson points out that in <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. 43, 103 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002), we allowed just such a defense.  That is true.  In that case, the Commissioner moved for the sanction, on the basis in part of the taxpayers' counsel's litigation conduct, i.e., "contest[ing] unreasonably the admissibility of documents", "fail[ing] to comply fully with discovery requests," unreasonably calling certain witnesses, and "unreasonabl[y] * * * defend[ing] against (1) respondent's motion to compel documents * * * and (2) respondent's offer of evidence as to certain marketing materials and other evidence."  <u>Id.</u> at 102.  With respect to those grounds, we said:

[*25] Petitioners are not directly responsible for most of the actions listed by respondent in support of his motion to impose penalties. Those actions are best traced to petitioners' counsel, and, given the facts of this case, we decline to impute the actions of petitioners' counsel to petitioners themselves for the purposes of imposing a penalty under section 6673(a)(1)(B). Petitioners have reasonably relied on the advice of their trial counsel that their litigating positions had merit. * * * [Id. at 103.]

The facts that were before us in Neonatology Assocs. are distinguishable from the facts here before us. We are not here dealing with taxpayers relying on counsel for how to conduct litigation. We are dealing with petitioners' decisions to bring this case in the first place and then to maintain it. Their declarations, set forth in part in Best v. Commissioner, at *21-*22, make it clear that it was not their idea to raise before Appeals and in this Court the issues with respect to which they assigned error. Each declares: "I have relied totally on the tax advice of MACPHERSON concerning my Collection Due Process Hearing * * * request, petition to the Tax Court, and Tax Court litigation." Id. (alteration in original). Petitioners' assignments of error challenge established law. Neither declares that he (or she) either read the petition or asked Mr. MacPherson about its content. As we said, id. at *22, "[we] need * * * [not] excuse a taxpayer's failure to review pleadings and other documents filed on his behalf." Also: "The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to

**[*26]** settled principles before they file returns and litigate." Id. We have no evidence that petitioners fulfilled those obligations. Petitioners may not blindly rely on counsel to advance arguments and use ignorance as a shield to avoid a section 6673(a)(1)(B) penalty. We continue to believe that petitioners should pay a section 6673(a)(1) penalty of $5,000 to the United States in this case.[8]

V.     Conclusion

We will make absolute the order to show cause in that we will award the United States $19,837.50 as a penalty imposed against Mr. MacPherson under section 6673(a)(2).

<u>The order to show cause will be made absolute</u>.

---

[8]Respondent informed Mr. MacPherson that petitioners' position was frivolous, and Mr. MacPherson had a duty to inform petitioners of respondent's position. See Rule 201(a); Model Rules of Prof'l Conduct r. 1.4. It should have been petitioners' decision as to whether they wanted to proceed with arguments that respondent regarded as frivolous. See Model Rules of Prof'l Conduct r. 1.2(a), 1.4. If Mr. MacPherson did not communicate such important information to petitioners, that may resolve a matter between them, but it does not discharge petitioners' obligations before this Court. See United States v. Boyle, 469 U.S. 241, 250 (1985).